**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MANUEL GONZALEZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-09-2992 |
| | § | |
| RIDGEWOOD LANDSCAPING, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is a suit under Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* to collect

unpaid wages and overtime.  Five former employees have sued Ridgewood Landscaping, Inc.,

alleging that they were not paid for some of the hours they worked and were not paid overtime

wages when they worked more than forty hours in a work-week .  The plaintiffs move to have their

case conditionally certified as a collective action and to have notice issued.  The proposed class is

defined as those who have worked for Ridgewood as an hourly employee performing manual labor

since September 14, 2006.  (Docket Entry No. 18).  Ridgewood opposes certification and notice.

(Docket Entry No. 19).  The plaintiffs have replied.  (Docket Entry No. 20).

Based on the motion, response, and reply, the record, and the applicable law, this court grants

the plaintiffs' motion for conditional certification.  The class consists of all individuals who were

employed by Ridgewood Landscaping, Inc. at any time from September 14, 2006 to the present, who

performed manual labor, and who were paid on an hourly basis.  By **June 11, 2010**, Ridgewood

must provide the plaintiffs with the names, current or last known addresses, telephone numbers, and

dates of employment for all hourly employees who worked for Ridgewood as manual laborers at any

time from September 14, 2006 to the present.  The parties must also submit a proposed form of notice.  A four-month opt-in period will begin when this court approves the form of notice.

The reasons for these rulings are explained below.

## I.     Background

Manuel Gonzalez, Jesus Turcios, Octavio Garcia, Armando Gonzalez, and Joaquin Martinez are all former employees of Ridgewood Landscaping, Inc., a Houston company owned and operated by Richard Casci.  The company installs and maintains landscaping and provides irrigation services.  At any time, Ridgewood has approximately 85 employees, although the company may employ more workers at busy times of the year.  All are paid on an hourly basis except Casci, his son, an office manager, and five supervisors.  (Docket Entry No. 18, Ex. 4, Casci Depo. at 127-28).  Most of the employees are Spanish speakers.  Many are citizens of foreign countries who have been hired using H-2B guest-worker visas.  (*Id.* at 122-25).

All five named plaintiffs were hourly workers.  Armando Gonzalez had a somewhat different job description than the others.  He worked in the irrigation department installing and repairing irrigation systems.  The others performed more traditional landscaping duties.

Ridgewood workers begin their days by reporting to the office sometime between 6:00 a.m. and 6:15 a.m.  The workers are divided up into approximately 15 crews of 2 to 8 members.  The crews load Ridgewood-owned vans and trucks with equipment and head to job sites.  (*Id.* at 101-02).  Ridgewood owns 35 vehicles.  (*Id.* at 105).  Many crews include more than one vehicle.  The time each crew leaves the office varies based on the project assigned to that crew.  At the job site, the workers perform various landscaping tasks until there is no work left to be done, at which point they clean up the job site, load the truck or van, and return to the office.  During the day, workers are

given either a 30- or 60-minute lunch break.  (*Id.*, Exs 1, ¶¶ 8-10; 2,  ¶¶ 8-10; 3,  ¶¶ 8-10).  If the job

permits, the crews sometimes move to a different job site during the day.  (Docket Entry No. 19, Ex.

C, Garcia Depo. at 14).  Turcios testified in his deposition that his crew would leave the last jobsite

at 3:30 p.m. to return to the office.  (*Id.*, Ex. D, Turcios Depo. at 15).  Once the crews returned to

the office, they had additional duties, which Garcia described as "washing everything, locking up

the weed eaters, loading the gas and doing everything."  (*Id.*, Ex. C, Garcia Depo. at 36).  According

to Garcia, he would not leave Ridgewood's facility until 5:15 p.m.  (*Id.*).  On rainy days, workers

were expected to report to the office at the usual time and wait out the storm.  If the weather did not

clear, they would be sent home.  Workers were not paid for this waiting time.  If the rain prevented

a crew from completing a job, they were expected to return over the weekend to finish.  (Docket

Entry No. 18, Ex. 4, Casci Depo. at 90-92, 108)**.**

Garcia testified in his deposition that he always worked more than 40 hours per week.

(Docket Entry No. 19, Ex. C, Garcia Depo. at 36).  Garcia stated as follows in his declaration:

> I generally worked at least 10 hours per day, and even longer days
> during the growing season.  I generally worked Monday through
> Friday and at least two Saturdays each month. In the growing season,
> I usually worked every Saturday.  The other workers worked similar
> hours.  I worked overtime each and every week that I worked at
> Ridgewood Landscaping.

(Docket Entry No. 18, Ex. 1, ¶ 8).  Turcios and Armando Gonzalez made similar statements.

Turcios stated that he worked most Saturdays each month .  (*Id.*, Ex. 2, ¶ 8).  Gonzalez stated that

he sometimes worked Saturdays and that he usually worked Saturdays during the growing season.

(*Id.*, Ex. 3, ¶ 8).  All three plaintiffs stated that they were not paid for all the hours they worked.  (*Id.*,

Exs. 1, ¶ 11; 2, ¶ 11; 3, ¶ 11).

3

Ridgewood did not have a punch card or electronic time card system for recording employee hours. Instead, the driver of each truck or van was responsible for writing down the name and number of hours worked for each person in the vehicle each day. These slips were then given by the drivers to the supervisors. Garcia and Gonzalez stated in their declarations that they were drivers responsible for recording time. They both stated that they did not record the time accurately because "my supervisor did not allow me to write down all of the hours that we worked." (*Id.*, Exs. 1, ¶ 11; 3, ¶ 11). Gonzalez testified in his deposition, however, that his practice was to "write down the hours from when I started working until the time I parked the pickup," which was "always more than eight hours." (Docket Entry No. 19, Ex. E, Gonzalez Depo. at 17, 25). Turcios was not a driver. He stated that the hours written down did not matter "because the supervisors would only give us credit for the number of hours that they wanted to." (Docket Entry No. 18, Ex. 2, ¶ 11).

Casci named one supervisor to serve as the payroll administrator. Until October 2007, this person was Richard Jurrens. After Jurrens was fired for misconduct in October 2007, Vince Mueller assumed the role. (*Id.*, Ex. 4, Casci Depo. at 69-75). The payroll administrator used payroll software to record the hours worked by each employee. The time slips created by the drivers and supervisors were given to the payroll administrator for entry into the computer or entered directly by one of two other supervisors, Alvaro Sanchez or Larry Tallerine. (*Id.*, Ex. 6, Mueller Depo. at 65-69). Mueller testified that he did not review the entries made by Tallerine but that he often reviewed and modified the entries made by Sanchez. (*Id.* at 69). Once the entries were finished for each two-week pay period, the payroll administrator printed an official time report and posted it in the office. (*Id.*, Ex. 4, Casci Depo. at 77-78). Ridgewood asked its employees to review their time and place their initials on the sheet to indicate approval. Casci testified that not all employees did

4

this.  (*Id.* at 66).  After a few days, the payroll administrator gave the report to the office manager,

Cindy Gillentine, who printed the payroll checks and stamped them with Casci's signature.  (*Id.* at

54-55).  One of the supervisors distributed the checks to the workers.

If an employee disagreed with the hours indicated on his time sheet, he was to complain to

the payroll administrator.  Mueller testified that ten to fifteen errors have been reported to him

during his tenure as payroll administrator, which he has always corrected.  (*Id.*, Ex. 6, Mueller Depo.

at 104).  It is unclear whether these corrections were made before or after the paychecks were issued.

In August 2007, however, just before Mueller took over for Jurrens, more than ten paychecks had

to be reissued because employees had been underpaid.  (Docket Entry No. 18, Ex. 4, Casci Depo.

at 74-77).  The plaintiffs stated in their declarations that not all reported errors were remedied.  (*Id.*,

Exs. 1, ¶ 12; 2, ¶ 12; 3, ¶ 12).  They also stated that they generally "complained about the long hours

and the fact that we were not being paid for all our hours to no avail."  (*Id.*).

The plaintiffs brought this suit on September 14, 2009 on behalf of themselves and others

similarly situated.  (Docket Entry No. 1).  They allege that Ridgewood willfully violated the FLSA,

which would allow the plaintiffs to recover unpaid wages over a three-year period before the suit

was filed.  The plaintiffs have moved for conditional class certification.  (Docket Entry No. 18).

They ask this court to issue notice to the following class: "All individuals who have worked for

[Ridgewood] at any time since September 14, 2006 as a worker who performed manual labor and

was paid on an hourly basis."  (Docket Entry No. 20 at 1).  Ridgewood opposes certification and has

also raised objections to the proposed notice and the length of time the plaintiffs have requested for

allowing workers to opt-in.  (Docket Entry No. 19).  The plaintiffs have replied.  (Docket Entry No.

20).

Each issue is analyzed below.

## II.     The Legal Standard

The FLSA requires employers to pay employees for hours worked and to pay those who

work more than forty hours in a work-week at overtime rates.  29 U.S.C. §§ 206, 207.  With respect

to overtime pay, the statue states in relevant part:

> Except as otherwise provided in this section, no employer shall
> employ any of his employees who in any workweek is engaged in
> commerce or in the production of goods for commerce, or is
> employed in an enterprise engaged in commerce or in the production
> of goods for commerce, for a workweek longer than forty hours
> unless such employee receives compensation for his employment in
> excess of the hours above specified at a rate not less than one and
> one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).  "'An employer who is armed with [knowledge that an employee is working

overtime] cannot stand idly by and allow an employee to perform overtime work without proper

compensation, even if the employee does not make a claim for the overtime compensation.'"

*Harvill v. Westward Comm'cns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Newton v. City*

*of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)).

Section 216(b) of the FLSA creates a cause of action for employees against employers

violating the compensation requirements of sections 206 and 207.  29 U.S.C. § 216(b).  Section

216(b) provides:

> An action . . . may be maintained . . . by any one or more employees
> for and in behalf of himself or themselves and other employees
> similarly situated.  No employee shall be a party plaintiff to any such
> action unless he gives his consent in writing to become such a party
> and such consent is filed in the court in which such action is brought.

*Id.*  Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the

court of their intention to become parties to the suit.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d

1207, 1212 (5th Cir. 1995).  District courts have discretion in deciding whether to order notice to potential plaintiffs.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–171 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action.  These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach.  *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  Most courts use the "two-step *ad hoc* approach" as the preferred method for the similarly-situated analysis rather than the Rule 23 requirements.  *See, e.g.*, *Maynor v. Dow Chemical*, 671 F. Supp. 2d 902, 930-31 (S.D. Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Lachapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis."  *Mooney*, 54 F.3d at 1213.  The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members.  *See id.* at 1213–14.  The

court's decision at this stage is often based only on the pleadings and affidavits that have been

submitted.  *Id.*  "Because the court has minimal evidence, this determination is made using a fairly

lenient standard, and typically results in 'conditional certification' of a representative class" that

provides potential class members with notice and the opportunity to opt-in.  *Id.* at 1214 n.8.  Even

this lenient standard appears to require  substantial allegations that potential members "were together

the victims of a single decision, policy, or plan . . . ."  *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*,

118 F.R.D. 392, 407 (D.N.J. 1988)).  At this stage, a plaintiff must make a minimal showing that:

(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those

aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and

defenses asserted; and (3) those individuals want to opt in to the lawsuit.  *See Prater v. Commerce*

*Equities Mgmt Co.*, No. H-07-2349, 2007 WL 4146714, at \*4 (S.D. Tex. Nov. 19, 2007); *Simmons*

*v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at \*5 (S.D. Tex. Jan. 24, 2007).  A factual

basis for the allegations is needed to satisfy the first step.  *See Hall v. Burk*, No. Civ. 301CV2487H,

2002 WL 413901, at \*3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of

widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co.*,

696 F.2d 884, 887 (11th Cir. 1983).

At the first stage, there must be a showing of "some identifiable facts or legal nexus [that]

bind the claims so that hearing the cases together promotes judicial efficiency."  *Barron v. Henry*

*County Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211

F.R.D. 411, 416 (D. Or. 2002)); *see also Basco*, 2004 WL 1497709, at \*5 (quoting *Heagney v.*

*European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate

when some factual nexus binds the named plaintiffs and potential class members as victims of a

particular alleged policy or practice)).  "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice."  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery.  *See Mooney*, 54 F.3d at 1214.  The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class.  *See id.*; *Lusardi*, 118 F.R.D. at 359.  At that point, the court makes a factual determination as to whether there are similarly situated employees.  *Id*.  If the district court finds that the claimants are similarly situated, the collective action may proceed.  *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3.  If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims.  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 508 (M.D. La. 2005).

Notice does not issue unless the court conditionally certifies the case as a collective action. *See, e.g., Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1086 (S.D. Iowa 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc.*, No. 06-1002 (RHK/AJB), 2007 WL 2422837, at *2 (D. Minn. Aug. 21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

### III.    Analysis

#### A.    Conditional Certification

This case is at the "notice stage" of the *Lusardi* analysis.  Ordinarily, at the notice stage, the parties have presented only affidavits.  The decision whether to issue notice to potential class members is "made using a fairly lenient standard." *Mooney*, 54 F.3d at 1213.  As Ridgewood notes, however, this is not a typical conditional certification motion because Ridgewood has deposed three plaintiffs, the plaintiffs have deposed two other Ridgewood employees, and some written discovery has been exchanged.  This does not increase the plaintiffs' burden to the more onerous standard that applies at the second, decertification stage.  That standard is only appropriate "after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214.  This discovery is appropriately considered in the conditional certification analysis, with the declarations submitted by the plaintiffs.

It is clear that the first and third elements of the conditional certification test are satisfied. Ridgewood has not argued otherwise.  Approximately 300 nonexempt employees have performed manual labor for Ridgewood in the past three years.  (Docket Entry No. 18, Ex. 5 at 7).  Casci testified that in August 2007, he learned that at least ten incorrect payroll checks were issued. (Docket Entry No. 18, Ex. 4, Casci Depo. at 74-77).  There is evidence of at least ten to fifteen additional complaints about unpaid overtime after October 2007 when Mueller assumed responsibility for making the official time records.  (*Id.*, Ex. 6, Mueller Depo. at 104).  All the plaintiffs stated that Ridgewood required employees to work more than 40 hours in a work-week, prevented employees from reporting all their hours, and failed to pay them for all the hours they worked.  There is a reasonable basis for crediting the plaintiffs' assertion that others were underpaid

in the same way the plaintiffs allege.  And Garcia, Turcios, and Gonzalez all stated in their sworn

declarations that other employees had complained about unpaid hours, viewed their treatment as

unfair, and "would want to join this case if they were given the opportunity."  (Docket Entry No.

18, Exs 1, ¶ 12; 2, ¶ 12; 3, ¶ 12).  Particularly in light of the large number of potential class

members, this is a sufficient showing at this stage that others are interested in joining.  *See Cantu*

*v. Vitol, Inc.*, No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009).

The remaining element of the conditional certification analysis, whether the plaintiffs and

the other potential class members are similarly situated, is disputed.  The plaintiffs argue that they

are similarly situated to the proposed class members because they all were paid hourly, performed

manual labor or other landscaping services, and had their time records kept by a single person.  The

plaintiffs argue that the entire proposed class was subject to a Ridgewood policy of failing to pay

for all hours worked and failing to pay overtime rates for hours worked in excess of forty hours in

a work-week.  Ridgewood argues that certification is improper because all five named plaintiffs

were assigned to the same project and supervised by the same person, while many of the putative

class members would have worked on different crews with different drivers and different

supervisors.  Each driver, Ridgewood argues, followed his own practice in terms of recording the

number of hours each crew member worked.  And each supervisor may have had his own practice

in handling—and possibly modifying—the reports given to him by the drivers.  Ridgewood also

argues that there were differences in the type of work the plaintiffs performed and that no plaintiff

was employed by Ridgewood during the entire class period.

Many courts have stated that putative class members must show that they were affected by

a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry.  *See, e.g.,*

*O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-CV-00085, 2006 WL 3483956, at \*3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005) (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95–97 (S.D.N.Y. 2003) (citations omitted) (a plaintiff must allege a common policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). But a common policy is not necessarily required. *See Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534-35 (S.D. Tex. 2008) (collecting cases).

"The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007); *see also Berger v. Cleveland Clinic Found.*, No. 1:05 CV 1508, 2007 WL 2902907, at \*20–21 (N.D. Ohio Sept. 29, 2007). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate "the economy of scale envisioned by the FLSA collective action procedure." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004); *see also Donihoo v. Dallas Airmotive, Inc.*, No.

CIV.A.3:97-CV-0109-P, 1998 WL 91256, at *1 (N.D. Tex. Feb. 23, 1998) ("[A]n inquiry into the employee's specific job duties . . . is not appropriate in a class lawsuit under Section 216(b)").

Based on the present record, none of Ridgewood's arguments is sufficient to defeat conditional certification under these standards. Ridgewood argues that certification is inappropriate because the crews had different drivers and supervisors and each driver and supervisor may have had a different approach to reporting the hours the crew members worked. The record shows that some plaintiffs were allegedly told not to report all their hours, while other plaintiffs' hours were reported accurately by their drivers and allegedly manipulated by their supervisors. The record is clear that one payroll administrator, either Jurrens or Mueller, was responsible for preparing the time records and paychecks for all Ridgewood employees, regardless of driver or immediate supervisor. Ridgewood's failure to supply a punch-card machine or similar system to record hours applied to all employees. The plaintiffs have alleged adequately and presented declarations showing a common policy of reporting fewer hours than the employees worked, every day of each work-week. The different approaches described—instructing the drivers to submit fewer hours than the employees worked or having the supervisors reduce those hours—does not defeat conditional certification. Similarly, it does not defeat conditional certification that the plaintiffs worked at Ridgewood for different lengths of time and that none worked at Ridgewood for the entire class period. The same recordkeeping system was in place for the entire three-year class period. The plaintiffs all state that they worked over 40 hours each week and were not paid of all of those hours.

There were, as Ridgewood argues, some differences in the plaintiffs' job duties. In particular, Armando Gonzalez worked on irrigation projects and the other named plaintiffs did not.

Gonzalez's irrigation work involved different types of tasks and less hard manual labor than the ordinary landscaping crews performed. These differences do not preclude conditional certification. The plaintiffs do not argue that they were misclassified as exempt from the FLSA. If they had, specific job duties would be relevant to determining proper classification. Instead, the parties agree that the plaintiffs were properly classified as nonexempt hourly workers and dispute only the number of hours worked. The differences in duties do not reduce the efficiencies of proceeding collectively. Even at the decertification stage, the plaintiffs will not need to establish that they are "identically situated." *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008).

Ridgewood's remaining arguments deal with time that employees spent at Ridgewood headquarters instead of their assigned jobsites. This includes time at the office before leaving for a jobsite and after returning from a jobsite and time on rainy days when the employees wait at the office. Ridgewood argues that collective action treatment is inappropriate because some plaintiffs performed work at the office during this time and some did not and because, depending on the crew they were assigned to, the plaintiffs spent varying amounts of time at the office. But even under the more stringent standard applied at the decertification stage, the need for individual plaintiffs to establish the amount of uncompensated time does not defeat certification. *See, e.g., Maynor*, 671 F. Supp. 2d at 934-35, 930-31; *Falcon*, 580 F. Supp.2d at 536-37; *Hill v. Muscogee County Sch. Dist.*, No. 4:03-CV-60, 2005 WL 3526669, at *4 (M.D. Ga. Dec. 20, 2005); *Thiebes v. Wal-Mart Stores, Inc.*, 2004 WL 1688544, at *1-2 (D. Or. July 26, 2004). Differences in damage amounts does not defeat collective action certification. *See, e.g., Moreau v. Klevenhagen*, 956 F.2d 516, 521-23 (5th Cir. 1992) (approving of the district court's decision to certify an FLSA class and bifurcate discovery). Conditional certification is appropriate on the present record.

### B.    Notice Issues

Ridgewood has also raised two additional objections.  The first is that the four-month period during which plaintiffs may opt-in to the class is too long.  Ridgewood argues that this period inefficient and proposes a sixty-day period.  The plaintiffs respond that the four-month period is necessary because nearly all the putative class members are Spanish speakers, many of whom are from or currently living in other countries.  It may be difficult to contact these individuals and for them to respond promptly. In such circumstances, it is appropriate to grant a longer opt-in period. Other courts have allowed more than four months in similar situations. *See Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007) (granting a nine-month opt-in period because many of the prospective plaintiffs were transient laborers from other countries); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240-41 (N.D.N.Y. 2002) (permitting a nine-month opt-in period for class of migrant farm workers from all over North America and other continents).  Because Ridgewood has not shown that it will be prejudiced by the four-month opt-in period, there is no reason to reach a different result than these other cases.

Second, Ridgewood argues that the form of notice should include the name and contact information of Ridgewood's attorney, not just the plaintiffs' attorneys, so the potential plaintiffs know who is representing Ridgewood and have an additional person to call for information about the case.  The plaintiffs argue that, because of the potential class members' unfamiliarity with American court proceedings, identifying defense counsel will cause confusion and may lead some potential plaintiffs to contact the wrong attorneys for representation.  The plaintiffs assert that this is a concern because defense counsel "will certainly seek to deter these putative plaintiffs from joining the lawsuit." (Docket Entry No. 20 at 5).  There is no basis for this accusation.  FLSA opt-in

notices often contain the names of all counsel.  Provided that the notice form clearly states which party each attorney represents and which attorneys should be contacted to join the lawsuit, there is little risk of confusion.  The parties are ordered to confer on this issue and submit an agreed form of notice to this court by **June 11, 2010.**

## IV.   Conclusion

The plaintiffs' motion for conditional certification is granted.  This court conditionally certifies a class consisting of: All individuals employed by Ridgewood Landscaping, Inc., at any time from September 14, 2006 to the present, as a worker who performed manual labor and who was paid on an hourly basis.

By **June 11, 2010**, Ridgewood must provide the plaintiffs with the names, current or last known addresses and telephone numbers, and dates of employment of all hourly employees who worked for Ridgewood at any time since September 14, 2006.  Also by **June 11, 2010**, the parties must submit a proposed notice.  The four-month opt-in period will begin when this court approves the form of notice.

SIGNED on May 10, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge